IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TARSCO BOLTED TANK, INC.,

Plaintiff,

v.

AMERICAN STRUCTURES, INC. and
AMERICAN ENGINEERED TANKS, LLC,

Defendants,

and

THE CINCINNATI SPECIALTY UNDERWRITERS
INS. CO.,

Intervenor.

OPINION and ORDER

25-cv-311-jdp

---

Plaintiff Tarsco Bolted Tank, Inc. bought several thousand bolts for the purpose of building water storage tanks for a power plant. A third party built the water storage tanks, but when it tested them, it discovered a leak that it attributed to defective bolts. The third party filed an arbitration demand against Tarsco for damages and ultimately settled. Tarsco now seeks damages from the sellers of the bolts for breach of contract and indemnification.

Two motions for summary judgment are pending. First, defendant American Structures, Inc. moves for summary judgment on Tarsco's claims against it, Dkt. 40, contending that it isn't liable for breach of contract or indemnification because it was not American Structures that sold the bolts, but its affiliate and co-defendant American Engineered Tanks, LLC. The court will grant American Structures' motion because Tarsco has failed to adduce any evidence that American Structures was a party to the bolt sale.

Second, American Engineered Tanks moves for summary judgment on the claims for declaratory judgment brought by its insurer, intervenor Cincinnati Specialty Insurance

Company. Cincinnati Specialty originally sought a declaration that the policy it issued to American Engineered Tanks does not cover the damages at issue in this case. But after summary judgment briefing, the parties now agree that the policy covers at least some of the damages at issue. The court will grant American Engineered Tanks's motion for summary judgment as undisputed.

## BACKGROUND

The court begins with a brief background of the case. The court will discuss additional facts relevant to each motion for summary judgment in the applicable section of the analysis.

This case arises from the construction of the Three Rivers Energy Center, a power plant located in Morris, Illinois. The general contractor overseeing the construction project contracted with Chattanooga Boiler & Tank Company to build and supply three bolted tanks, which would be used to store water for fire protection at the power plant. Chattanooga subcontracted with plaintiff Tarsco Bolted Tank, Inc. to design and provide materials for the bolted tanks.

Tarsco purchased several thousand bolts for the tanks from either defendant American Structures, Inc. or defendant American Engineered Tanks, LLC. (American Structures and American Engineered Tanks are affiliated entities, but the parties disagree about which entity sold the bolts to Tarsco. The court will address that issue when it turns to American Structures' motion for summary judgment). Tarsco delivered the bolts and other materials for the tanks to Chattanooga, which assembled the tanks.

During hydrotesting, at least one of the tanks leaked. Chattanooga blamed Tarsco, asserting that the bolts were defective. Chattanooga and Tarsco ultimately settled their dispute

at arbitration. Tarsco then filed this lawsuit against American Structures and American Engineered Tanks, asserting claims for breach of contract and common-law indemnification.

After Tarsco filed suit, the court allowed American Engineered Tanks' insurer Cincinnati Specialty Underwriters Insurance Company to intervene. Cincinnati Specialty Underwriters sought a declaratory judgment that the policy it issued to American Engineered Tanks does not cover the events at issue in this case.

## ANALYSIS

The court's main concern is the two pending summary judgment motions. American Structures moves for summary judgment on Tarsco's claims against it, contending that American Engineered Tanks, not American Structures, sold the bolts to Tarsco. American Engineered Tanks moves for summary judgment on Cincinnati Specialty's insurance coverage claim, asserting that its insurance policy covers the events at issue in this case. But there is a threshold question that the court must address, which is whether this court has subject-matter jurisdiction under 28 U.S.C. § 1332.

### A. Jurisdiction

Federal courts have diversity jurisdiction over cases that arise under state law only if the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The amount-in-controversy requirement is satisfied here: when the complaint was filed, Chattanooga was seeking several million dollars in damages from Tarsco, which Tarsco in turn sought from the defendants via indemnification. *See* Dkt. 15-3 (Chattanooga's arbitration demand). But there is a potential issue related to complete diversity.

Complete diversity means that "none of the parties on either side of the litigation may be a citizen of the state of which a party on the other side is a citizen." *Howell v. Tribune Entertainment Co.,* 106 F.3d 215, 217 (7th Cir. 1997). There is no diversity problem between the original parties to the lawsuit. Tarsco is a Delaware corporation with its principal place of business in Missouri, so it is a citizen of Delaware and Missouri. American Structures is a Wisconsin corporation with its principal place of business in Wisconsin, so it is a citizen of Wisconsin. And American Engineered Tanks is a limited-liability company whose sole member is a citizen of Wisconsin, so it is a citizen of Wisconsin. Dkt. 66 (stipulation on jurisdiction). But a potential problem arises with the intervenor, Cincinnati Specialty Underwriters Insurance Company, which is a Delaware corporation with its principal place of business in Ohio. That means that both Cincinnati Specialty and Tarsco are citizens of Delaware.

After discovering that Cincinnati Specialty and Tarsco were non-diverse, the court ordered Cincinnati Specialty to submit a supplemental brief on jurisdiction. Dkt. 67. Based on Cincinnati Specialty's response and the court's own research, the court is satisfied that there is no jurisdictional problem here. The general rule is that jurisdiction is determined based on the facts that exist when the complaint is filed. *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006). Relying on that general rule, the court of appeals has held that intervention by a non-diverse party generally does not destroy diversity jurisdiction, unless the intervenor was an indispensable party at the time the complaint was filed. *Am. Nat'l Bank and Tr. Co. of Chicago v. Bailey,* 750 F.2d 577, 582 (7th Cir. 1984); *Costain Coal Holdings, Inc. v. Resource Inv. Corp.*, 15 F.3d 733, 734 (7th Cir. 1994).

The court of appeals has not yet provided a definition for what makes an intervenor "indispensable." *See Schuld v. Thodos,* No. 21-CV-1807, 2022 WL 888870, at *5 n.1 (N.D. Ill.

Mar. 25, 2022). But it has explained that the key principle is whether "the plaintiff should have joined [the party] at the outset, and if he had done so the court would have known that complete diversity was lacking." *Am. Nat'l Bank*, 750 F.2d at 582. Thus, a party is not indispensable if its interest in the case arises only after the lawsuit was filed. *Id.* at 583; *Aurora Loan Servs.*, 442 F.3d at 1025. Several district courts have employed the four-factor balancing test for necessary joinder under Federal Rule of Civil Procedure 19(b) to analyze whether an intervening party is indispensable. *E.g.*, *Faulman Inv., Ltd. v. Engineered Prods. & Servs., Inc.*, 830 F. Supp. 3d 776, 789 (E.D. Wis. 2026); *Schuld*, 2022 WL 888870, at *5 n.1. That test asks (1) whether a judgment rendered in the party's absence might be prejudicial to that party or to the existing parties; (2) the extent to which relief can be tailored to avoid prejudice to the party; (3) whether a judgment in the party's absence would be adequate; and (4) whether the plaintiff has an adequate remedy if the action is dismissed. *See Woodring v. Culbertson*, 227 F.R.D. 290, 294 (N.D. Ind. 2005) (citing *United States v. Tribal Dev. Corp.*, 100 F.3d 476, 478–79 (7th Cir. 1996)).

Applying these rules to this case, it is clear that Cincinnati Specialty is not an indispensable party. Cincinnati Specialty intervened to adjudicate whether the insurance policy it issued to American Engineered Tanks covers the events at issue in this case. Tarsco had no obligation to join Cincinnati Specialty from the outset, because Cincinnati Specialty wasn't an interested party before the lawsuit was filed—its interest arose only after the lawsuit triggered a possible coverage obligation. *See Faulman*, 830 F. Supp. 3d at 789–90 ("Additionally, [the intervening insurer's] interest in determining whether the policy covers the burglary and vandalism at the St. Louis property did not ripen until *after* this suit commenced.") (emphasis in original). The Rule 19(b) factors compel the same conclusion. The coverage issue is a

separate question from whether the defendants sold defective bolts to Tarsco and are liable for breach of contract and indemnification. The court could render an adequate judgment on the underlying claims without prejudicing Cincinnati Specialty or any other party.

Because Cincinnati Specialty is not an indispensable party, the court concludes that its intervention does not destroy diversity jurisdiction. With jurisdiction established, the court proceeds to the merits of the parties' summary judgment motions.

**B. American Structures' motion**

American Structures moves for summary judgment on Tarsco's claims against it, contending that its affiliate American Engineered Tanks sold the bolts to Tarsco, not American Structures. The court will grant summary judgment to American Structures only if there are no genuine disputes of material fact and American Structures entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must construe disputed facts and draw all reasonable inferences in Tarsco's favor. *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016).

Tarsco doesn't dispute that its claims against American Structures fail if American Structures wasn't involved in supplying the bolts. *Novelly Oil Co. v. Mathy Const. Co.*, 147 Wis. 2d 613, 617 433 N.W.2d 628, 629–30 (Ct. App. 1988) (a basic requirement of contract law is that the parties in fact have a contract).[1] But Tarsco contends that there are genuine disputes of fact about American Structures' involvement, for two reasons. First, Tarsco says that much of the evidence American Structures provided to show that the American Engineered Tanks supplied the bolts is inadmissible. Second, Tarsco says that it has adduced sufficient evidence for a reasonable jury to find that American Structures was involved in the sale.

[1] In their briefs, both sides assume that Wisconsin law applies to the claims in this case, so the court will do the same.

### 1. Evidentiary issues

On summary judgment, parties must provide proposed findings of fact supported by citations to the record. See Fed. R. Civ. P. 56(c)(1)(A); Standard Attachments for Civil Cases Assigned to Judge Peterson, attachment to Dkt. 10, at 2, § I.B. Cited evidence must be "admissible to the same extent as at trial, at least if the opposing party objects, except that testimony can be presented in the form of affidavits or transcripts of sworn testimony rather than in person." *Steffek v. Client Servs., Inc.*, 948 F.3d 761, 769 (7th Cir. 2020); see also Fed. R. Civ. P. 56(c)(2). If one side objects to a proposed fact on the ground that the supporting evidence is inadmissible, then the court must consider the evidentiary objection before relying on that fact in its decision. *Steffek*, 948 F.3d at 769.

Tarsco objects to many of American Structures' proposed findings of fact as unsupported by admissible evidence. The objections fall into two categories.

First, American Structures proposes facts about a call between its president Earl Wildenberg and Tarsco materials manager Tisha Hall, in which Wildenberg told Hall that American Structures did not have the bolts that Tarsco requested, but that American Engineered Tanks might have them. Dkt. 67, ¶¶ 9–10. Tarsco objects to these proposed facts because they are supported only by American Structures' interrogatory responses, which Tarsco says are unsworn and are inadmissible hearsay. Dkt. 54, at 6. Tarsco is wrong about the interrogatory responses being unsworn: the signature page shows that Wildenberg signed and swore to the responses before a notary. Dkt. 48-1, at 6. As for the hearsay issue, Tarsco is correct that a party's own interrogatory responses are generally inadmissible hearsay. *See Luster v. Illinois Dep't of Corr.*, 652 F.3d 726, 731 n.2 (7th Cir. 2011). But at summary judgment, a sworn affidavit from a witness with personal knowledge is an acceptable alternative to sworn

testimony at trial. *Steffek*, 948 F.3d at 769. The interrogatory responses were signed and sworn by Wildenberg, just like an affidavit, so the court will consider them to the same extent that it would consider an affidavit.

Tarsco also argues that the interrogatory responses contain "substantial credibility concerns" that should preclude the court from considering them at summary judgment. Dkt. 54, at 7. Tarsco points to American Structures' fourth interrogatory response, in which American Structures says that it and American Engineered Tanks are separate entities with no shared employees, locations, financial accounts, warehouses, or inventory. Dkt. 48-1, ¶ 4. Tarsco says that this is demonstrably false because American Structures' president Earl Wildenberg is also the sole member of American Engineered Tanks, and because in their answers to the complaint, American Structures and American Engineered Tanks listed the same PO Box in Menomonie, Wisconsin, as their principal place of business.

These facts don't render American Structures' fourth interrogatory response demonstrably false. Wildenberg is associated with both companies, but its not clear that he's an "employee" of either company, so could still be true that the companies share no employees. And it appears that American Structures and American Engineered Tanks share a PO Box, but American Structures said only that the two businesses share no "locations." It's at least debatable whether a shared PO Box is a "location." In any event, even if American Structures' fourth interrogatory response is suspect, American Structures did not rely on it to support its proposed findings of fact. Tarsco cites no authority holding that an entire affidavit can be disregarded because a portion of it is disputed, nor is the court aware of any.

Second, Tarsco objects to multiple proposed findings of fact that rely on emails, invoices, bank statements, and other business records from American Engineered Tanks. Tarsco

says that these records are not authenticated, because American Structures introduced them via the affidavit of its attorney, who does not have personal knowledge of their authenticity.

Tarsco is correct that documents submitted in support of a summary judgment motion must be authenticated, *Scott v. Edinburg,* 346 F.3d 752, 759–60 & n.7 (7th Cir. 2003), meaning that the proponent of the document must adduce "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Submitting evidentiary documents via the declaration of litigation counsel is a questionable practice, because counsel often lacks a foundation of personal knowledge to establish the bona fides of the evidence. The most direct way to authenticate a document is via testimony from its author. Fed R. Evidence 901(b)(1); *Devbrow v. Gallegos*, 735 F.3d 584, 586–87 (7th Cir. 2013). But documents can also be authenticated by their "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . taken together with all the circumstances." Fed. R. Evidence 901(b)(4). Emails, for instance, can be authenticated circumstantially based on the sender's email address, the email's context, and evidence of other correspondence between the parties. *Devbrow*, 735 F.3d at 586; *Fenje v. Feld*, 301 F. Supp. 2d 781, 809 (N.D. Ill. 2003).

The court concludes that the business records that American Structures relies on have sufficient markers of authenticity to be admissible under Rule 901, because their appearance, contents, and characteristics all support the conclusion that they are American Engineered Tanks's business records. The emails were sent from email addresses that appear to be associated with American Engineered Tanks (@aetanks.com), and the senders' email signatures contain the American Engineered Tanks logo. *E.g.*, Dkt. 48-2; Dkt. 48-3; Dkt. 48-7. The invoices attached to the emails also have the American Engineered Tanks logo. *E.g.*, Dkt. 48-4,

at 9. Further, Tarsco has not adduced any evidence that these records are inauthentic. Tisha Hall, a Tarsco employee, received almost all the emails and invoices, so if they were inauthentic, Tarsco could have easily submitted its own version of the records along with a declaration from Hall explaining any discrepancies.

The court overrules Tarsco's objections to the interrogatory responses and the American Engineered Tanks business records.[2] With the evidentiary issues resolved, the court proceeds to whether Tarsco has met its burden to show that American Structures was involved in the bolt sale.

**2. American Structures' involvement in the sale**

American Structures' core contention is that American Engineered Tanks, not American Structures, sold the allegedly defective bolts to Tarsco. To prevail on its breach-of-contract and contractual indemnification claims against American Structures, Tarsco must demonstrate that it and American Structures had a valid contract; in other words, that American Structures assented to sell bolts to Tarsco and Tarsco assented to purchase them. *See Goossen v. Est. of Standaert*, 525 N.W.2d 314, 318 (Wis. App. 1994) (citing Restatement (Second) of Contracts § 3). To prevail on its common-law indemnification claims, Tarsco must demonstrate that it has been exposed to liability due to American Structures' wrongful act and that the obligation to bear the loss should be shifted to American Structures as a matter of equity. *See Est. of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶¶ 39–43, 342 Wis. 2d 29, 816 N.W.2d 853. Neither side distinguishes between these two categories of claims in their briefs; rather, they both

[2] In its brief, Tarsco also objected to the expert report of American Structures' engineering expert Peter McKeighan. *See* Dkt. 54, at 5–6. McKeighan's report is not relevant to the summary judgment motions, so the court need not consider that objection.

assume that Tarsco's claims fail if American Structures was not a party to the bolt sale. The key question, therefore, is simple: could a reasonable jury infer from the evidence that American Structures was a party to the bolt sale?

The relevant facts about the sale are not genuinely disputed. In May 2021, Tisha Hall, a materials manager at Tarsco, emailed two employees of American Structures to ask whether American Structures had certain quantities and sizes of bolts. Dkt. 48-18, at 4. American Structures' president Earl Wildenberg followed up with Hall via telephone, informing her that American Structures didn't have the bolts but that American Engineered Tanks might.[3] Dkt. 48-1, ¶¶ 9–10. The next day, Terrel Sutliff, whose email signature identified her as a marketing manager for American Engineered Tanks, emailed Hall, explaining, "Earl asked me to provide you with our bolt count and pricing for the two sizes you requested." Dkt. 48-5, at 10. Sutliff asked Hall to send her a purchase order if Tarsco wanted to move forward. *Id.*

Hall sent Sutliff a purchase order, which listed American Structures, not American Engineered Tanks, as the vendor. Dkt. 48-2, at 3. Sutliff didn't correct that mistake, but she and Hall emailed back and forth a few more times about the number of bolts Tarsco would be ordering and the expected shipping costs. Hall then sent Sutliff an updated purchase order (still listing American Structures as the vendor), Dkt. 48-3, at 4, and, after determining the shipping costs, Sutliff sent Hall back an invoice for $11,648.29 for the bolts and shipping costs. Dkt. 48-4, at 9. The invoice listed American Engineered Tanks as the vendor. *Id.* American

[3] Tarsco objected to the proposed facts about Wildenberg's call with Hall on evidentiary grounds, as the court already discussed. But it did not submit any contrary evidence, such as a declaration from Hall, disputing what Wildenberg said. Accordingly, Wildenberg's account of the call is undisputed.

Engineered Tanks shipped the bolts from its warehouse facility to a third-party location as requested by Tarsco. *Id.* at 5–6.

A few weeks later, Tarsco wrote a check for the invoice amount, listing American Structures as the payee. Dkt. 48-6, at 4. About a week later, American Engineered Tanks made a $14,202.79 deposit in its bank account. The receipt associated with that deposit includes a handwritten note that says: "Cash Dale Maroszek Inv 21-0031 $2554.50; Check Tarsco Inv 21-0027 $11648.29." *Id.* at 2–3. The parties don't say who wrote this note or whether Tarsco's check was actually deposited on that day, but they do agree that the check was deposited at some point.

Tarsco contends that a reasonable jury could infer from the above evidence that American Structures was a party to the bolt sale, for two reasons. First, Tisha Hall communicated with employees of American Structures about the transaction, including its president Earl Wildenberg. Second, Tarsco's purchase orders listed American Structures as the vendor for the bolts, and the check it issued to pay for the bolts listed American Structures as the payee and was deposited.

The court concludes that Tarsco has not adduced evidence sufficient for a reasonable jury to find that American Structures was a party to the bolt sale. Tarsco is correct that Tisha Hall initially contacted American Structures about purchasing bolts. But the undisputed evidence is that Earl Wildenberg subsequently referred Hall to American Engineered Tanks, that Hall arranged the sale with American Engineered Tanks employee Terrel Sutliff, and that American Engineered Tanks ultimately shipped the bolts to Tarsco from its warehouse. It appears that Hall mistakenly believed that Tarsco was buying the bolts from American Structures, because she listed American Structures as the vendor on Tarsco's purchase orders

and ultimately wrote the check out to American Structures. But a contract requires mutual assent. Even if Tarsco thought that it was buying bolts from American Structures, there is no evidence that American Structures thought that it was selling bolts to Tarsco.

Tarsco's strongest piece of evidence is that the check it issued payable to American Structures was deposited. Tarsco doesn't have any evidence of who deposited it, but it argues that a reasonable jury could infer that it was American Structures because American Structures was the payee. American Structures counters that American Engineered Tanks deposited the check, but the only evidence it offers on that point is a handwritten note on a bank deposit receipt, which is hardly compelling evidence.[4]

Ultimately, however, the issue of which entity deposited the check is a strawman. The key question isn't who was paid for the bolts; it's who sold them. If American Structures had for some reason deposited a check for goods that it didn't sell, that wouldn't automatically make it a party to the sale (although it would potentially open it up to other forms of legal liability, such as for unjust enrichment). On the key question of who sold the bolts, all the evidence points to American Engineered Tanks, which undisputedly arranged the sale and shipped the bolts from its warehouse.

Tarsco also suggests in its brief that American Engineered Tanks may have been acting as American Structures' agent in the sale or that American Structures may have somehow ratified the sale. But Tarsco points to no evidence supporting either of these theories. Tarsco

---

[4] Neither party addresses why American Engineered Tanks apparently deposited a check that was written out to American Structures. That action could call into question whether the two companies are truly operated as separate entities, which could support an argument for piercing the corporate veil. *See Consumer's Co-op. of Walworth Cnty. v. Olsen*, 142 Wis. 2d 465, 484, 419 N.W.2d 211 (1988). But Tarsco doesn't argue that veil-piercing is warranted here, so the court will not consider that issue.

has the burden of proof on its claims, so at summary judgment, it has to adduce evidence sufficient to create a triable issue on each element of those claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Tarsco takes issue with American Structures' evidence, but it didn't adduce any contrary evidence that would support a finding that American Structures was a party to the bolt sale. The court will grant American Structures' motion for summary judgment.

**C. American Engineered Tanks' motion**

American Engineered Tanks moves for summary judgment on intervenor Cincinnati Specialty Underwriters declaratory judgment claim, contending that its policy with Cincinnati Specialty unambiguously covers the damages at issue in this case.

The policy states that Cincinnati Specialty would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" caused by an "occurrence" during the coverage period. Dkt. 51-2, at 17. An "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 31. The policy excludes coverage for damages to replace defective products manufactured or sold by American Engineered Tanks. *Id.* at 31, 32–33.

Although Cincinnati Specialty's intervenor complaint suggests a possible disagreement about policy construction, it is clear from the parties' summary judgment briefing that they now agree about the relevant policy construction. Tarsco's claims arise from leaking water storage tanks that Tarsco says was caused by American Engineered Tanks's defective bolts. The parties agree that these events qualify as an "occurrence" under the policy, so if the tanks were damaged because American Engineered Tanks's bolts were defective, the policy would cover that damage. *See* Dkt. 58, at 11 (response brief); Dkt. 63, at 4 (reply brief). The parties also agree that the policy does *not* cover the replacement costs of the bolts, because the policy

excludes coverage for damages to replace defective products sold by American Engineered Tanks. Dkt. 58, at 10; Dkt 63, at 4–5. The parties' agreement on these two issues resolves most of the coverage issues in this case.[5]

The remaining issue is whether American Engineered Tanks' request for summary judgment against Cincinnati Specialty is premature. Cincinnati Specialty does not dispute the policy construction, but it contends that the summary judgment motion should be denied because it is not yet clear what the exact amount of covered and non-covered damages are. But Federal Rule of Civil Procedure 56 allows parties to seek summary judgment as to only a part of a claim. Fed. R. Civ. P. 56(a); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("At the summary-judgment stage, the court can properly narrow the individual *factual* issues for trial by identifying the material disputes of fact that continue to exist.") (emphasis in original). There is no reason to withhold summary judgment on the policy construction issue just because the amount of damages remains unclear.

The parties agree that Cincinnati Specialty has at least some coverage obligation in this case, so the court will grant American Engineered Tanks's motion for summary judgment on Cincinnati Specialty's request for a declaration that it has "no obligation to pay any sums of money for which [American Engineered Tanks] may be held liable in this action," and that "the Policy identified does not provide coverage to any person, party, or entity for the damages

[5] In its reply brief, American Engineered Tanks says that Cincinnati Specialty also conceded that it had a duty to defend American Engineered Tanks in this lawsuit. Dkt. 63, at 7. Cincinnati Specialty explained in its response brief that it was currently defending American Engineered Tanks pursuant to the policy, but it did not concede that it would continue to have an obligation to do so. *See* Dkt. 58, at 5. And American Engineered Tanks did not raise the defense issue until its reply brief, so it forfeited that issue. *Bergal v. Roth*, 2 F.4th 1059, 1062 (7th Cir. 2021). The court takes no position at this point on whether the policy requires Cincinnati Specialty to defend American Engineered Tanks on an ongoing basis.

sought in this action." *See* Dkt. 31-1 (intervenor complaint, at 3). Whether the policy covers all the damages that American Engineered Tanks may ultimately be held liable for, or whether some of those damages might fall into a policy exclusion, have not been presented by the parties, so the court will reserve those issues for another day.

**D. Remaining issues**

The court is granting American Structures' motion for summary judgment on all claims, so American Structures will be dismissed from this case. The court has also resolved most of the policy construction issues raised by Cincinnati Specialty's intervenor complaint. But the summary judgment motions did not address the heart of this case, which is whether American Engineered Tanks sold Tarsco defective bolts and whether it is responsible for indemnifying Tarsco for the damages it paid to Chattanooga.

Because American Engineered Tanks did not move for summary judgment on the main issues in this case, it is not year clear what those issues are. Thus, to assist the court with preparing for trial, the parties are directed to file trial briefs along with the other required pretrial submissions discussed in the preliminary pretrial conference order. Those briefs should include the following information: (1) a summary of all the claims and defenses that need to be resolved at trial; (2) an explanation of each issue that the jury will have to decide to resolve those claims; (3) a summary of the evidence the parties intend to offer on each issue; and (4) an explanation for why the parties included each of their proposed substantive jury instructions and how those instructions relate to a question on their proposed verdict form. If they wish, the parties may file a short response to the other parties' trial briefs when they file their objections to other pretrial submissions.

# ORDER

IT IS ORDERED that:

1. Defendant American Structures, Inc.'s motion for summary judgment, Dkt. 40, is GRANTED. American Structures is DISMISSED from the case.

2. Defendant American Engineered Tanks, LLC's motion for summary judgment on the issue whether intervenor Cincinnati Specialty Underwriters Insurance Company has some coverage obligation in this case, Dkt. 49, is GRANTED.

3. The parties are directed to file trial briefs along with their other required pretrial submissions. If they wish, the parties may file a short response to the other parties' trial briefs when they file their objections to the other pretrial submissions.

Entered October 14, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge